Daniel M. Kelly, J.
The petitioner seeks to evict the respondent from apartment 11F of premises known as 930 Fifth Avenue, New York City, New York, in that it is alleged that, in violation of the proprietary lease and certain house rules appended to and made a part thereof, the respondent has harbored and kept a dog in the said apartment without petitioner’s permission, despite repeated demands that she cease to harbor the said dog.
The building is a co-operative and the respondent is the owner of 662 shares of the capital stock of the petitioner which shares have been allocated to the said apartment. The respondent is the lessee of a proprietary lease, the term of which is from February 28, 1969 until September 30, 1984. Paragraph *777 15 of the proprietary lease reads in part as follows: “ 15. The Lessor has established house rules which are appended to this lease. # * * The Lessee covenants to obey all such rules and see that they are faithfully observed by his family, guests, employees and subtenants. ’ ’
House rule 17 provides in part as follows: “ Seventeen. No bird or animal shall be kept or harbored in the building unless the same in each instance be expressly permitted in writing by the Lessor.”
Paragraph 30 of the lease provides in part as follows: “30: If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (h) inclusive of this paragraph, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed, as if that were the date originally fixed for its expiration and all right, title and interest of the Lessee hereunder shall thereupon cease and expire, and the/ Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former estate as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved: ”.
Subdivision (d) of the said paragraph 30, upon which the petitioner relies, provides as follows: “ (d) If the Lessee shall continue to violate a house rule for thirty days after notice thereof shall have been duly given, or if the Lessee shall repeatedly violate or disregard house rules after notice and demand for compliance shall have been given, or if the Lessee shall default in the performance of any covenant or provision hereof, other than the covenant to pay rent or covenants otherwise provided for in this paragraph 30, for thirty days after written notice of such default shall have been given by the Lessor.”
Paragraph 33 of the lease provides in part as follows: “ 33: On the termination of this lease under subdivisions * * * (d) * * * of paragraph 30 * * # the Lessee shall surrender to the corporation the certificate or certificates for the *778 shares of stock of the corporation owned by the Lessee and appurtenant to this lease. Whether or not said certificate or certificates are surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new stock certificate for the shares of stock of the Lessor owned by the Lessee and allocated thereto when a purchaser therefor is found. Upon such issuance the stock certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received from the issuance of such stock as provided in paragraph 13 hereof.”
With respect to the petitioner applying the proceeds received from the issuance of such stock, paragraph 13 of this lease provides in summary that the petitioner is to be reimbursed for attorney’s fees in connection with resumption of possession, as well as other expenses that might be incurred, including alterations, repairs, decorations and cleaning.
The petitioner proved its allegations, and, if this were the usual proceeding involving a landlord and tenant, the court, in view of recent decisions of the Appellate Division in the First and Second Departments, would, in its opinion, have no alternative but to grant final judgment in favor of the petitioner.
The gravamen of this proceeding is of an entirely different nature, and the court must examine the provisions of the proprietary lease to determine what happens in the event the court should grant final judgment.
In addition to being evicted from the apartment, the co-operative owner (respondent herein) would be required to surrender to the petitioner the certificates for her shares of stock in the co-operative. Whether or not the certificates were surrendered, the petitioner could in any event, pursuant to said paragraph 33, issue a new stock certificate and a new proprietary lease for the apartment to whomsoever the petitioner might decide to sell the stock. Paragraph 33 further provides that, upon such issuance to the new lessee, the stock certificates owned or held by the lessee (respondent herein) are automatically canceled and rendered null and void. The lessor is then to apply the proceeds received from the issuance of the new stock certificates as provided in paragraph 13 of the lease, referred to supra.
The respondent paid $65,000 to become a co-operative owner of the apartment in or about February 28, 1969, and claims to have expended over $40,000 in capital improvements to the apartment, making a total investment of over $100,000.
In the opinion of the court, the provisions of paragraph 33 of the lease are patently unconstitutional, in that the property of *779 the respondent having a market value of at least $100,000 would be rendered null and void and taken away from her by the petitioner to sell to the lowest rather than the highest bidder if it so desired. There is no reasonable provision in the lease to protect the respondent and by virtue of a final judgment for the petitioner, she would lose complete control oyer her right to sell the shares of stock in the co-operative (with the permission of the board of directors) to the highest bidder.
Had there been some reasonable provisions in the lease to protect the respondent, in the event final judgment was granted in favor of the petitioner, to still permit her the right to be the master over her own property and to sell the shares at the highest market price possible, this court would enforce the provisions of the house rules with respect to dogs. By virtue of the provisions of this lease, there is what amounts to a taking without due process of law and indeed a confiscation of' an extremely valuable property right of the respondent, which, as stated heretofore, the court regards as patently unconstitutional.
In the normal landlord and tenant relationship, there is no requirement that the landlord treat each tenant in the same manner with respect to each and every provision of a lease. The court can envision no objection to a landlord waiving a specific provision of a lease for one tenant and at the same time seeking strict enforcement of the same provision against another tenant whatever the reason of the landlord might be. In this proceeding, the petitioner herein is a co-operative and the respondent owns 662 shares of stock of petitioner. In the opinion of the court, all of the stockholders must be treated in a uniform manner. It is undisputed that, in addition to permitting holders of proprietary leases to keep their dogs who were tenants in the building before the building became a co-operative, the petitioner permitted two individuals to keep their dogs when they became holders of proprietary leases in the building. The consent to one of these individuals was given at or about the same time that the respondent closed title to her apartment, to wit, on or about February 28,1969. Since the court is deciding this case solely on constitutional grounds, no determination is being made as to whether or not the consent referred to would be sufficient to constitute discrimination.
Accordingly, final judgment for respondent, dismissing the petition of the petitioner on the merits.